UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY,<br><br>  Plaintiff,<br><br> v.<br><br> LOCKHEED MARTIN CORPORATION,<br><br>  Defendant. | **Civil Action No.:**<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Continental Casualty Company ("Continental"), by its attorneys, for its Complaint against Defendant, Lockheed Martin Corporation ("Lockheed"), alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory relief pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 to determine and resolve questions of actual controversy with respect to the rights and obligations of the parties under primary liability policies that were issued by Continental to Glenn L. Martin Company and Martin Marietta Corporation and under which Lockheed seeks coverage with respect to six underlying lawsuits.

2.      The primary policies that were issued by Continental and were in effect from 1956 to 1977 are as follows: Policy No. CL 2688472R (effective 1/1/1956 – 4/1/1957); Policy No. CL 2694977R (effective 4/1/1957 – 4/1/1958); Policy No. CL 2693660R (effective 4/1/1958 – 4/1/1959); Policy No. CL 2693500R (effective 4/1/1959 – 4/1/1960); Policy No. CL 4305260R (effective 4/1/1960 – 4/1/1961); Policy No. LAA 4292334R (effective 4/1/1961 – 1/1/1962); Policy No. LAA 4302892R (effective 1/1/1962 – 1/1/1963); Policy No. LAA 6250002R (effective 1/1/1963 – 6/30/1965); Policy No. LAA 6250032 (effective 7/1/1965 – 7/1/1968);

Policy No. LAA 7251730 (effective 7/1/1968 – 7/1/1971); Policy No. LAA 7251733 (effective 7/1/1971 – 7/1/1974); Policy No. LAA 7251736 (effective 7/1/1974 – 7/1/1977) (hereinafter, collectively "Primary Policies").

3.      Continental seeks a declaration that it is not obligated to either defend or indemnify Lockheed in connection with the claims asserted against Lockheed in the six underlying lawsuits, all of which were filed in the United States District Court, Middle District of Florida (hereinafter, collectively "Underlying Lawsuits"), and are captioned as follows:

a.   *Karyn Vandestreek, et al. v. Lockheed Martin Corp.*, Case No.: 6:21-cv-1570-RBD-DCI ("*Vandestreek*");

b.   *Henderson et al. v. Lockheed Martin Corporation et al.,* Case No.: 6-21-cv-01363-RBD-DCI ("*Henderson*");

c.   *Davis v. Lockheed Martin Corporation*, Case No.: 6:22-cv-00081-RBD-DCI ("*Davis*");

d.   *Grayson v. Lockheed Martin Corporation*, Case No.: 6:20-cv-01770-RBD-DCI ("*Grayson*");

e.   *Perrotti v. Lockheed Martin Corporation*, Case No.: 6:22-cv-01388-RBD-DCI ("*Perrotti*"); and

f.   *Millea et al. v. Lockheed Martin Corp. et al.,* Case No.: 6:23-cv-00677-RBD-DCI ("*Millea*").

To the extent it is determined that Lockheed is entitled to reimbursement of defense costs for one or more of the Underlying Lawsuits, which is disputed, Continental further seeks a declaration that it is only obligated to pay its pro-rata allocable share of reasonable and necessary rates and

costs and further has no obligation with respect to any uncovered portion of any Underlying Lawsuit.

4.       Upon information and belief, in 1957, Lockheed began business operations at a weapons manufacturing facility at 5600 Sand Lake Road, Orlando, FL 32819 ("Facility"). The Facility was originally owned by the Glenn L. Martin Company, which became Martin Marietta Corporation in 1961, and eventually became Lockheed Martin Corporation in a merger between Martin Marietta Corporation and Lockheed Corporation in 1995.

5.       During its regular course of business at the Facility, Lockheed allegedly generated, stored and disposed of toxic contaminants and manufacturing by-products such as perfluoroalkyls ("PFAS"), trichloroethylene ("TCE"), tetrachloroethylene ("PCE"), benzene, chloroform, xylene, lead and arsenic. Lockheed allegedly tried to remediate the contamination with air strippers and air sparge systems, which are alleged to have increased the exposure of and harm to claimants by causing the pollutants to become gaseous. These practices allegedly resulted in pollution at the Facility, which moved offsite, contaminating the air, soil and groundwater of nearby areas. Such pollution has allegedly caused Facility employees and other individuals working and living nearby to generally develop bodily injuries, incur medical monitoring costs, diminish the property value of their homes and/or suffer the loss of consortium.

6.       All of the Primary Policies contain terms and conditions which must be satisfied in order for Continental to have an obligation to defend Lockheed and/or to reimburse it for defense costs and indemnity amounts in the Underlying Lawsuits. In addition, certain policies contain exclusions, such as a pollution exclusion, that bar coverage for certain types of injuries or damage.

7.     Continental brings this action for declaratory relief in response to Lockheed's assertion that it is entitled to payment of or reimbursement of defense costs and indemnity from Continental in connection with the Underlying Lawsuits.

8.     Continental seeks a declaration that Lockheed is not entitled to a defense or indemnity for the claims at issue in the Underlying Lawsuits because they are not covered under the terms and conditions of the Primary Policies.

9.     Continental seeks a declaration that Lockheed is not entitled to a defense or indemnity for the claims at issue in the Underlying Lawsuits because of its failure to comply with conditions precedent to coverage, including but not limited to, failure to provide timely notice to Continental.

10.     Continental seeks a declaration that coverage is precluded for the Underlying Lawsuits under one or more of the Primary Policies due to express exclusions contained in those policies, including but not limited to, the pollution exclusion.

11.     Continental seeks a declaration that coverage is precluded under each Primary Policy for those claims at issue in the Underlying Lawsuits where the plaintiff's and/or decedent's first exposure to the contamination which allegedly caused injury occurred after the expiration of the policy period of some or all of the Primary Policies.

12.     Continental seeks a declaration that coverage is precluded for those Underlying Lawsuits which seek medical monitoring costs and/or damages due to diminution of property rates as those claims do not seek damages for bodily injury, personal injury, and/or property damage within the terms and conditions of the Primary Policies.

## PARTIES

4

13.     Plaintiff Continental is a corporation organized under the laws of Illinois. At relevant times, Continental was authorized and did transact business in the State of New York. Continental issued the Primary Policies under which Lockheed has sought coverage for the Underlying Lawsuits, and Continental agreed to defend under a complete reservation of rights.

14.     Upon information and belief, Defendant Lockheed is a Maryland corporation with its current headquarters and principal place of business in Bethesda, Maryland. At all relevant times, Lockheed was authorized and did business in the State of New York.

## JURISDICTION AND VENUE

15.     Jurisdiction in this Court is proper under 28 U.S.C § 1332(a)(1) and all other applicable provisions of the FRCP because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

16.     Upon information and belief, Defendant Lockheed is currently a Maryland corporation authorized to do business in New York and the majority of the Primary Policies were issued to Lockheed and its predecessors in New York.

17.     Venue is proper pursuant to FRCP § 1391(b)(2) because a substantial number of the events and omissions giving rise to this action occurred in this District and the majority of the Primary Policies were issued by Continental and delivered to Lockheed's and its predecessors' offices located in New York, New York.

## THE POLICIES

18.     Continental issued the Primary Policies to Lockheed Martin's predecessors for successive periods from January 1, 1956 to July 1, 1977. The Primary Policies were issued on an annual basis from 1956 to 1963, on a two-year basis in 1963 to 1965 and on a three-year basis

from 1965 to 1977. Continental also issued umbrella/excess policies to Lockheed's predecessors for the 1963 to 1977 policy years ("Umbrella/Excess Policies").

19.     The focus of this Complaint is on the Primary Policies, as those are the policies under which Lockheed sought a defense from Continental for the Underlying Lawsuits.

20.     Continental is not seeking relief as to the Umbrella/Excess Policies at this time because Lockheed is not presently seeking coverage for the Underlying Lawsuits under these policies.

21.     A schedule of the Primary Policies and Umbrella/Excess Policies is attached as Exhibit A and made a part hereof.

22.     The Primary Policies contain terms, conditions and exclusions that are fully set forth in the policies and which must be satisfied for a claim to come within the scope of coverage and for any entitlement to defense.

23.     The Primary Policies in effect from April 1, 1958 to July 1, 1977 contain conditions that are the same or similar to the following:

NOTICE OF CLAIM OR SUIT

If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or representatives.

NOTICE OF OCCURRENCE

Written notice of any occurrence shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses.

24.     The Primary Policies in place from 1956 – 1960 contain Insuring Agreements that state, in the same or substantially similar language, as follows:

(a)  Coverage B – Bodily Injury Liability – Except Automobile

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease including death at any time resulting therefrom sustained by any person and caused by accident.

(b) Coverage D – Property Damage Liability – Except Automobile

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

25. The 1956 – 1961 Primary Policies contain Occurrence Basis Endorsements where "Occurrence" is defined as:

an event, or continuous repeated exposure to conditions which unexpectedly causes injury during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence.

26.     The 1961 – 1965 Primary Policies contain Insuring Agreements that state, in the same or substantially similar language, as follows:

I.      Coverage – Bodily Injury, Personal Injury and Property Damage

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

(a)  Bodily injury caused by an occurrence, or

(b)  Personal injury, or

(c)  Malpractice injury, or

(d) Property damage accidentally caused,

7

and the company shall defend any suit against the insured alleging such bodily injury, personal injury, injury arising out of malpractice or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation and settlement of any claim or suit as it deems expedient.

IV.    Definitions

(a) Personal Injury. The term "personal injury" means injury, other than bodily injury, sustained by any person or organization arising out of false arrest, detention or imprisonment, malicious prosecution, unconsented touching, illegal restraint, libel, slander, humiliation, ridicule, invasion of privacy, defamation of character or other similar or related causes in the conduct of the named insured's business.

(b) Property Damage. The term "property damage" means injury to or destruction of property, including loss of use thereof. The words "property damage accidentally caused" shall include property damage resulting from a continuous or repeated exposure to conditions which result in property damage during the policy period.

(c) Occurrence. The word "occurrence" means an event, or continuous or repeated exposure to conditions, which unexpectedly causes injury during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence. Assault and battery shall be deemed an occurrence unless committed by or at the direction of the insured.

V. Policy Period, Territory

This policy applies only to accidents, injuries or occurrences which occur during the policy period. With respect to property damage caused by exposure to injurious conditions over a period of time involving two or more liability policies issued by the company and affording insurance for such property damage, all such injury, destruction or loss of use caused by the same injurious conditions shall be deemed to occur only on the last day of the last exposure and the applicable limit of liability contained in the policy in effect on the last day of such exposure shall be the applicable limit of liability.

If claim is made or suit is brought elsewhere than within the United States of America, its territories or possessions or Canada, the company shall have the right but not the duty to investigate and settle such claims and to defend such suits. In any case in which the company elects not to investigate, settle or defend, the insured under the super vision of the company will make or cause to be made such investigation and defense as are reasonably necessary, and subject to prior

authorization by the company, will effect to the extent possible such settlement or settlements as the company and the insured deem prudent. The company shall reimburse the insured for the reasonable costs of such investigation and defense and, within the applicable limits of liability of the policy, for the amounts of such authorized settlements.

27.     The Primary Policies in place from 1965 – 1974 contain Insuring Agreements that

state, in the same or substantially similar language, as follows:

I.      Coverage – Personal Injury or Property Damage Liability

To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or property damage caused by occurrence.

V. Definitions

Whenever used in this policy:

Personal Injury means bodily injury, sickness or disease, including death resulting therefrom sustained by any person, or injury sustained by any person arising out of prosecution, unconsented touching, illegal restraint, libel, slander, humiliation, wrongful eviction, wrongful entry, ridicule, invasion of privacy, defamation of character or other similar or related causes in the conduct of the named insured's business except the named insured's advertising activities.

Property Damage means injury to or destruction of tangible property, including loss of use thereof.

Occurrence means an event, or continuous or repeated exposure to conditions, which unexpectedly causes personal injury or property damage during the policy period. All such exposure to substantially the same general conditions existing at or emanating from each premises location shall be deemed one occurrence. Assault and battery shall be deemed an occurrence unless committed by or at the direction of the insured.

VI. Policy Period, Territory

This policy applies only to accidents, injuries or occurrences which occur during the policy period. With respect to property damage caused by exposure to

injurious conditions over a period of time involving two or more liability policies issued by the company and affording insurance for such property damage, all such injury, destruction or loss of use caused by the same injurious conditions shall be deemed to occur only on the last day of the last exposure and the applicable limit of liability contained in the policy in effect on the last day of such exposure shall be the applicable limit of liability.

If claim is made or suit is brought elsewhere than within the United States of America, its territories or possessions or Canada, the company shall have the right but not the duty to investigate and settle such claims and to defend such suits. In any case in which the company elects not to investigate, settle or defend, the insured under the super vision of the company will make or cause to be made such investigation and defense as are reasonably necessary, and subject to prior authorization by the company, will effect to the extent possible such settlement or settlements as the company and the insured deem prudent. The company shall reimburse the insured for the reasonable costs of such investigation and defense and, within the applicable limits of liability of the policy, for the amounts of such authorized settlements.

28.     The 1974 – 1977 Policy contains an Insuring Agreement that states in relevant

part, as follows:

Special Comprehensive Liability Insurance

I.      Coverage A – Personal Injury Liability
        Coverage B – Property Damage Liability

        The Company will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of

                A.  Personal Injury
                B.  Property Damage

        To which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.

29.     The Primary Policy in effect from 1974 – 1977 contains a section that states, in

the same or substantially similar language, as follows:

        The Company designated in the declarations (a stock insurance company, herein called the Company) in consideration of the payment of the premium, in reliance

10

upon the statements in the declarations made a part hereof and subject to all of the terms of this policy, agrees with the named insured as follows:

Definitions

(a) "Bodily Injury" means bodily injury, mental injury, mental anguish, psychic damage, shock, sickness, disease or disability, sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

(b)  "Property Damage" means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence.

(c) "Occurrence" means an accident or a happening or a fortuitous event an act or series of acts of the same or similar nature, or a continuous or repeated exposure to conditions, which unexpectedly results in personal injury or property damage […], except: […] (2) damage caused by repeated exposure to conditions over a period of time involving more than one annual period or more than one policy consecutively issued by the company to the named insured shall be deemed to have been caused only on the last day of the last exposure.

30.     The Primary Policies in effect from July 1, 1971 to July 1, 1974 and July 1, 1974 to July 1, 1977 include a pollution exclusion ("Pollution Exclusion"), that is the same or similar to the following:

This insurance does not apply:

To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

\*\*\*

## UNDERLYING LAWSUITS

### A.  Vandestreek

31.     On October 22, 2021, Karyn Vandestreek filed a complaint against Lockheed in the *Vandestreek* lawsuit.

32.     The *Vandestreek* complaint alleges that Lockheed mismanaged its storage of toxic materials at the Facility, which caused the discharge of hazardous substances known to cause cancer and other deadly diseases into the air and ground. As a result, Ms. Vandestreek's deceased husband, Daniel, who worked across the street from the Facility at his landscape nursery for nearly a decade, was exposed to such substances and diagnosed with Grate IV Glioblastoma in 2018. It is claimed the exposure ultimately caused his death in 2020.

33.     On August 18, 2022, Marsh McLennan sent a notice letter, on behalf of Lockheed, to Continental, advising that Lockheed was seeking a defense and indemnity with respect to *Vandestreek*.

34.     The Primary Policies contain a "Notice of Claim or Suit" provision which requires that the insured shall immediately forward to Continental every demand, notice, summons or other process received.

35.     Lockheed tendered the *Vandestreek* lawsuit to Continental on August 18, 2022. The *Vandestreek* lawsuit was served on Lockheed on or about October 22, 2021, which was over nine months prior to tender.

36.     Since Lockheed did not immediately transmit the complaint, Lockheed breached the "Notice of Claim or Suit" provision.

37.     Due to Lockheed's failure to immediately notify Continental of the *Vandestreek* lawsuit as required by the Primary Policies, coverage under these policies is precluded.

38.     Coverage is also precluded due to Lockheed's failure to comply with the "Notice of Occurrence" provision in the Primary Policies, which requires Lockheed to notify Continental of an occurrence under the policy as soon as practicable.

39.     Lockheed's delay in providing notice of the underlying claim was untimely and in breach of the "Notice of Occurrence" provision.

40.     The *Vandestreek* complaint alleges the plaintiff's husband, Daniel, was exposed to toxic and volatile contaminants by working at his landscape nursery business located approximately 600 feet directly across from Lockheed's Facility for nearly a decade. The complaint alleges Daniel Vandestreek was diagnosed with Grade IV Glioblastoma on October 23, 2018 and died on April 19, 2022 at 43 years old. In the plaintiff's verified answers to Lockheed's first set of interrogatories dated April 8, 2022, the plaintiff affirmed that her husband worked directly across the street from Lockheed's Facility from approximately 2011 through November 2019.

41.     Each of the occurrence definitions in the Primary Policies requires that there be either bodily injury or personal injury during the policy period in order for coverage to be triggered under the policies. There are no allegations of any injury during the period of any Primary Policy, and in fact, there could be none, as the first exposure to contaminants which allegedly resulted in injury occurred after the expiration of the last Primary Policy. Thus, there is no bodily injury or personal injury during the policy period and therefore there is no coverage.

42.     By letter dated December 12, 2022, Continental agreed to provide a defense to Lockheed for *Vandestreek* under the Primary Policies, pursuant to a full reservation of rights. In particular, Continental reserved its right to deny coverage if any or all of the Underlying Lawsuits include allegations that do not constitute an "occurrence" as defined by the Primary

Policies. Continental also reserved the right to unilaterally withdraw from participating in the defense in the event it is determined there is no defense obligation triggered in any or all of the pending suits.

43. On September 28, 2023, judgment was entered for Lockheed and against Vandestreek, which Lockheed did not report to Continental until October 30, 2023.

## B. Davis

44. On or about January 19, 2022, Michael Davis filed an amended complaint on behalf of himself and as personal representative of his wife Carol Davis against Lockheed in the *Davis* lawsuit.

45. The *Davis* complaint alleges that while Carol Davis was working at the Facility from 1981 to 2001, she was exposed to contaminated soil, air and groundwater which caused her to develop multiple sclerosis. She suffered bodily injury, pain and suffering, sorrow and mental anguish and received extensive treatments for her conditions. Moreover, Michael Davis alleges the loss of companionship, comfort, guidance, kindly offices and advices of his wife.

46. The Primary Policies at issue contain a "Notice of Claim or Suit" provision which requires that the insured shall immediately forward to Continental every demand, notice, summons or other process received.

47. Lockheed tendered the *Davis* lawsuit to Continental on August 18, 2022. The complaint transmitted with the notice letter sent by Marsh was with respect to an Amended Complaint. Lockheed did not transmit to Continental the original complaint filed in *Davis.*

48. The Amended Complaint was served on Lockheed on or about January 19, 2022, which was seven months prior to tender.

14

49.    Lockheed breached the "Notice of Claim or Suit" provision as it did not immediately forward to Continental the *Davis* complaint and thus, coverage is precluded under the Primary Policies.

50.    Coverage is also precluded under the Primary Policies due to Lockheed's failure to comply with the "Notice of Occurrence" provision which requires Lockheed to notify Continental of an occurrence under the policies as soon as practicable.

51.    Lockheed's delay in providing notice of the *Davis* lawsuit was untimely and in breach of the "Notice of Occurrence" provision.

52.    It is alleged in the underlying complaint that Mr. Davis's wife was first exposed to the pollutants that caused her injuries while working at the Facility from 1981 to 2001, which is after the expiration of all of the Primary Policies. Moreover, Lockheed's motion for summary judgment filed on June 20, 2023 and Davis's objections and answers to Lockheed's first set of interrogatories on December 9, 2022, confirmed that Davis's wife was exposed while working at Lockheed from 1981 to 2001. There are no allegations of any injury during the period of any Primary Policy, and in fact, there could be none, as the first exposure to contaminants that resulted in injury occurred after the expiration of the last Primary Policy. Thus, there is no bodily injury or personal injury during the policy period and therefore there is no coverage.

53.    By letter dated December 12, 2022, Continental agreed to provide a defense to Lockheed for *Davis* under the Primary Policies, pursuant to a full reservation of rights.   In particular, Continental reserved its right to deny coverage if any or all of the allegations in the pending lawsuits do not constitute an "occurrence" as defined by the Primary Policies. Continental also reserved the right to unilaterally withdraw from participating in the defense in

the event it is determined there is no defense obligation triggered in any or all of the pending suits.

## C.  Perrotti

54.     On or about July 28, 2022, Jennifer Perrotti filed a complaint against Lockheed on behalf of herself and as personal representative of her husband Anthony Perrotti in the *Perrotti* lawsuit.

55.     Perrotti alleges Lockheed contaminated the soil, air and groundwater at the Facility by mismanaging the storage and disposal of toxic materials used to carry out its business operations. Perrotti alleges that from 1997 to 2020, Lockheed exposed her husband to toxins while working at the Facility, resulting in his bodily injury and death. Perrotti also alleges loss of consortium. There are no allegations of any injury during the period of any of the Primary Policies, and in fact, there could be none, as the first exposure to contaminants which resulted in injury occurred after the expiration of the last Primary Policy. Thus, there is no bodily injury or personal injury during the policy period and therefore there is no coverage.

56.     The Primary Policies contain a "Notice of Claim or Suit" provision which requires that the insured shall immediately forward to Continental every demand, notice, summons or other process received.

57.     The *Perrotti* lawsuit was served on Lockheed on or about July 28, 2022 (22 days prior to tender).

58.     Lockheed tendered the *Perrotti* lawsuit to Continental on August 18, 2022. Marsh sent a notice letter to Continental on behalf of Lockheed advising that Lockheed was seeking a defense and indemnity from the Primary Policies with respect to the *Perrotti* complaint.

59.     Lockheed breached the "Notice of Claim or Suit" provision as it did not immediately forward to Continental the *Perrotti* complaint and thus, coverage is precluded.

60.     Coverage is also precluded due to Lockheed's failure to comply with the "Notice of Occurrence" provision which requires Lockheed to notify Continental of an occurrence under the policy as soon as practicable.

61.     Lockheed's delay in providing notice of the *Perrotti* complaint was untimely and in breach of the "Notice of Occurrence" provision.

62.     By letter dated December 12, 2022, Continental agreed to provide a defense to Lockheed for *Perrotti* under the Primary Policies, pursuant to a full reservation of rights.  In particular, Continental reserved its right to deny coverage if any or all of the Underlying Lawsuits involve allegations that do not constitute an "occurrence" as defined by the Primary Policies. Continental also reserved the right to unilaterally withdraw from participating in the defense in the event it is determined there is no defense obligation triggered in any or all of the pending suits.

### D.  Millea

63.     On April 14, 2023, Kenna Rae Millea filed a complaint against Lockheed and other defendants on behalf of herself and as personal representative of her deceased father Bradley Paul Brewer, Sr. in the *Millea* lawsuit.

64.     Millea alleges that Lockheed's dangerous and reckless mismanagement of hazardous toxins at the Facility exposed her deceased father, who worked within the vicinity of the Facility from 2004 to 2021, to disease-causing contaminants. As a result, he was diagnosed with bladder cancer and suffered bodily injury, pain and suffering, sorrow and mental suffering and received extensive treatment for his conditions. The exposure eventually led to his death in

2021. Additionally, his daughter Kenna Rae Millea alleges loss of consortium. There are no allegations of any injury during the period of any Primary Policy, and in fact, there could be none, as the first exposure to contaminants which resulted in injury occurred after the expiration of the last Primary Policy. Thus, there is no bodily injury or personal injury during the policy period and therefore there is no coverage.

65.     The Primary Policies contain a "Notice of Claim or Suit" provision which requires that the insured shall immediately forward to Continental every demand, notice, summons or other process received.

66.     The *Millea* lawsuit was served on Lockheed on or about April 14, 2023 (one month and 18 days prior to tender).

67.     Lockheed tendered the *Millea* lawsuit to Continental on May 31, 2023 in a notice letter. Marsh sent the letter on behalf of Lockheed advising that Lockheed was seeking defense and indemnity from the Primary Policies for *Millea*.

68.     Lockheed breached the "Notice of Claim or Suit" provision as it did not immediately forward to Continental the *Millea* complaint and thus, coverage is precluded.

69.     Coverage is also precluded due to Lockheed's failure to comply with the "Notice of Occurrence" provision which requires Lockheed to notify Continental of an occurrence under the policy as soon as practicable.

70.     Lockheed's delay in providing notice of the *Millea* complaint was untimely and in breach of the "Notice of Occurrence" provision.

71.     By letter dated June 7, 2023, Continental agreed to provide a defense to Lockheed for *Millea* under the Primary Policies, pursuant to a full reservation of rights.  In particular, Continental reserved its right to deny coverage if any or all of the Underlying Lawsuits involve

allegations that do not constitute an "occurrence" as defined by the Primary Policies. In response to the notice in May, it extended the defense and reservation of rights set out in the December 2022 letter discussing the five other claims.

### E.  Henderson

72.     On or about March 2, 2022, Henderson and 66 other claimants filed a Fourth Amended Complaint on behalf of themselves and as personal representatives of others against Lockheed and other defendants in the *Henderson* lawsuit.

73.     The *Henderson* complaint generally alleges that Lockheed exposed the claimants to toxic wastes by mishandling harmful chemicals at the Facility which caused them bodily injury, incurring medical monitoring costs and loss of consortium. The claimants either lived or worked near the Facility for a range of years and the specific exposures and alleged resulting injury of each of the claimants is specifically alleged in the complaint.

74.     Lockheed received the *Henderson* complaint before August 19, 2021 and also received a copy of the Fourth Amended Complaint filed on March 2, 2022.

75.     Lockheed tendered the Fourth Amended Complaint in *Henderson* to Continental on August 18, 2022. Marsh sent a notice letter to Continental on behalf of Lockheed advising that Lockheed was seeking defense and indemnity from the Primary Policies with respect to the Fourth Amended *Henderson* Complaint. Copies of prior complaints were not transmitted to Continental on or before August 18, 2022.

76.     Lockheed breached the "Notice of Claim or Suit" provision as it did not immediately forward to Continental the Fourth Amended *Henderson* complaint or any prior complaints and thus, coverage is precluded.

77.     Coverage is also precluded due to Lockheed's failure to comply with the "Notice of Occurrence" provision which requires Lockheed to notify Continental of an occurrence under the Primary Policies as soon as practicable.

78.     Out of the 67 claimants in *Henderson*, 63 allege injury and exposure that occurred after the expiration of the Primary Policies. Only four claimants in *Henderson* arguably allege any exposure during any of the policy periods of the Primary Policies. Of those four, Brenda Jackson and Deborah Reese sued for diagnostic medical testing due to the loss of their parents whom they allege were exposed in 1970. Jackson and Reese do not allege bodily injury or personal injury as defined by the Primary Policies, and thus Continental owes no coverage for the claims being made by these plaintiffs. The other two claimants, Marie Outing and Chris Reynolds Jr., allege first exposure in 1963 and 1970, respectively. Thus, as to Outing, there is no possibility of bodily injury or personal injury during any policy in effect prior to 1963. For Reynolds, Jackson and Reese, there is no possibility of bodily injury or personal injury during any policy in effect prior to 1970, and therefore there is no coverage.

79.     There are no allegations of any injury during the period of any Primary Policy with respect to the remaining 63 claimants and, in fact, there could be none, as the first exposure to contaminants which resulted in injury occurred after the expiration of the last Primary Policy. Thus, there is no bodily injury or personal injury during the policy period for these 63 claimants and therefore no coverage as to each.

80.     Brenda Jackson and Clifton Reynolds Jr.'s claims were dismissed without prejudice on October 25, 2022 for their failure to complete fact sheets which Lockheed did not report to Continental until October 30, 2023.

81.     By letter dated December 12, 2022, Continental agreed to provide a defense to Lockheed for *Henderson* under the Primary Policies, pursuant to a full reservation of rights.  In particular, Continental reserved its rights to deny coverage if it is determined that any or all of the allegations in the pending lawsuits do not allege an "occurrence" as defined by the Primary Policies. Continental also reserved the right to unilaterally withdraw from participating in the defense in the event it is determined there is no defense obligation triggered in any or all of the Underlying Lawsuits.

### F.   Grayson

82.     On or about March 2, 2022, Phyllis Grayson and Phillip Penson filed a Fourth Amended Class Action Complaint on behalf of themselves individually and on behalf of two classes – one for medical monitoring and one for homeowners claiming diminution to property values – in the *Grayson* lawsuit.

83.     Grayson, Penson and the medical monitoring class allege that Lockheed's mismanagement of hazardous toxins at the Facility exposed the community to toxic waste, posing extreme risks to human health that requires medical monitoring. The homeowners class alleges diminution in value to their property. Neither of these causes of action allege bodily injury, personal injury and/or property damage within the meaning of the Primary Policies.

84.     The Policies at issue contain a "Notice of Claim or Suit" provision which requires that the insured shall immediately forward to Continental every demand, notice, summons or other process received.

85.     The *Grayson* Fourth Amended Class Action Complaint was served on Lockheed on or about February 2, 2022 (over five months prior to tender). As noted, this was the *fourth* amended complaint filed in *Grayson*.

86.     Lockheed tendered the *Grayson* lawsuit to Continental on August 18, 2022. Marsh sent a notice letter to Continental on behalf of Lockheed advising that Lockheed was seeking defense and indemnity from the Primary Policies with respect to Grayson's Fourth Amended Class Action Complaint. Copies of prior complaints were not transmitted to Continental on or before August 18, 2022.

87.     Lockheed breached the "Notice of Claim or Suit" provision as it did not immediately forward to Continental the Fourth Amended *Grayson* complaint or any prior complaints and thus, coverage is precluded.

88.     Coverage is also precluded due to Lockheed's failure to comply with the "Notice of Occurrence" provision which requires Lockheed to notify Continental of an occurrence under the policy as soon as practicable.

89.     Lockheed's delay in providing notice of the complaints in *Grayson* was untimely and in breach of the "Notice of Occurrence" provision.

90.     By letter dated December 12, 2022, Continental agreed to provide a defense to Lockheed for *Grayson* under certain primary policies, pursuant to a full reservation of rights.  In particular, Continental reserved its right to deny coverage if any or all of the Underlying Lawsuits do not constitute an "occurrence" as defined by the Primary Policies. Continental also reserved the right to unilaterally withdraw from participating in the defense in the event it is determined there is no defense obligation triggered in any or all of the Underlying Lawsuits.

91.     On or about December 6, 2022, *Grayson* was dismissed with prejudice, which Lockheed did not report to Continental until October 30, 2023, approximately one year after the claim was tendered.

## **TENDERS AND RESERVATION OF RIGHTS**

92.     By letter dated December 12, 2022, Continental expressly reserved its rights in response to Lockheed's first notice letter dated August 18, 2022. In response to Lockheed's second notice dated May 31, 2023, Continental expressly reserved its rights on June 7, 2023. Among other rights, Continental specifically reserved the following rights:

> To the extent that it is later determined that any alleged or actual damages in any or all of the Pending Suits are not because of "bodily injury" as that term is defined in the Policy, no coverage will be provided for such damages or injury.

> Should CNA's investigation or discovery determine that the claims made against Lockheed do not constitute a claim for damages because of "property damage" as that term is defined in the Primary Policies, no coverage will be owed.

> To the extent that it is later determined that any or all of the pending suits involve allegations that do not contain an "occurrence" as defined in the Primary Policies, no coverage will be owed.

> Any property damage that occurred solely prior or subsequent to the dates of the primary policies is not covered by the policies, and thus, CNA is under no obligation to defend or indemnify claims for any such property damage.

> No coverage is provided for any property damage that was either expected or intended from the standpoint of the insured.

> Coverage for the claim may be barred in whole or in part, to the extent that any claims do not seek recovery for "damages" within the meaning of the primary policies.

> To the extent it is later determined that Lockheed has not complied with and/or has breached one or more of the conditions in the policies in connection with the Pending suits, including any applicable notice provisions, coverage may not be provided.

> To the extent that it is later determined that any alleged or actual "bodily injury" in any or all of the Underlying Lawsuits was to an insured's employee, and/or that any of these matters involve claims under any worker's compensation law, disability law or similar law, coverage may not be provided for such injury under the Policies.

> To the extent that it is later determined that Lockheed failed to cooperate with CNA, coverage may not be provided.

93.     In its reservation of rights letter, Continental also specifically reserved the right to unilaterally withdraw from participating in the defense of Lockheed in the event it is determined that no defense obligation was triggered in any or all of the tendered Underlying Lawsuits.

94.     With respect to the Pollution Exclusion, Continental specifically reserved the right to deny coverage, including the right to withdraw from the defense, to the extent the discharge, dispersal or release of pollutants was not sudden and accidental. Continental reserved the right to disclaim coverage under the Pollution Exclusion as more information became available and it determined that the exclusion limits or bars coverage.

95.     Additionally, in its reservation of rights letter, Continental reserved the right to select, at its sole discretion, defense counsel of its own choosing at any time.

## PAYMENT OF DEFENSE COSTS

96.     After the last Underlying Lawsuit was tendered to Continental in May 2023, Continental requested information about the rates Lockheed negotiated with Greenberg Traurig, the firm that Lockheed had already retained to defend it in the Underlying Lawsuits.

97.     On July 11, 2023, Continental again asked to be put in touch with whomever was handling the Lockheed account to look at Greenberg Traurig's invoices and determine the status of the Underlying Lawsuits.

98.     On August 29, 2023, Continental wrote to Lockheed, Marsh and Greenberg Traurig renewing its request for the invoices from the dates of notice to the present.

99.     The next time Lockheed reached out to discuss the invoices was on October 18, 2023, where it asked to set up a call on the same day.

100.    Lockheed did not send Continental any defense bills until October 23, 2023. It sent the remainder on October 30, 2023.

101.    Until on or about October 18, 2023, Continental was not aware that Chubb Insurance undertook the defense of the *Perrotti* and *Davis* lawsuits. After a call between Continental and Lockheed, Continental received a chart with the Underlying Lawsuits and amounts being allocated to Continental and Chubb respectively. It appears from this chart that all defense costs for *Perrotti* and *Davis* have been paid by Chubb Insurance. As Lockheed has not withdrawn the tender for those two matters, Continental seeks a declaration that it owes no obligation to pay for the past or future defense costs for *Perrotti* and *Davis.*

102.    Although it is Continental's position that coverage is not owed for defense costs for either the *Henderson* or *Grayson* matters for the reasons set forth above, Continental has agreed to pay its pro-rata share of the reasonable and necessary defense costs as calculated by Continental for these two matters, pending resolution of this litigation. Although denied, to the extent Continental is found to have a duty to defend or an obligation to pay defense costs, Continental seeks a ruling that it is only responsible for its pro-rata allocable share of reasonable and necessary defense costs associated with the portion of any Underlying Lawsuit deemed covered, and has no obligation with respect to any uncovered portion of any lawsuit.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment - No Duty to Defend)

103.    Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1-102.

104.    The Primary Policies contain various terms, conditions and definitions, which Lockheed must satisfy or otherwise must be satisfied for amounts Lockheed has incurred and will incur in the future in connection with the Underlying Lawsuits to be covered under the Primary Policies and for Continental to have a duty to defend Lockheed in connection therewith.

In addition, certain of the Primary Policies contain certain exclusions which preclude any duty to defend Lockheed against some or all of the injuries or damage alleged in the Underlying Lawsuits.

105.   Lockheed is unable to establish coverage or is otherwise precluded from coverage for the injuries or damage arising from the claims at issue in the Underlying Lawsuits including, but not limited to, the following reasons:

a.   To the extent that any harm alleged does not constitute "bodily injury," "personal injury" and/or "property damage" as those terms are defined in the Primary Policies, there is no coverage thereunder;

b.   There is no coverage under the Primary Policies for bodily injury, personal injury and/or property damage which was not caused by an "occurrence" as that term is defined therein and/ or "accident" within the meaning thereof;

c.   There is no coverage under the Primary Policies for bodily injury, personal injury and/or property damage which did not occur during the policy periods thereof as required by such policies;

d.   There is no coverage under the Primary Policies for bodily injury, personal injury and/or property damage which was expected or intended from the standpoint of the insured within the meaning of such policies;

e.   There is no coverage under the policies because of Lockheed's failure to comply with the Notice of Claim or Suit and Notice of Occurrence provisions as required by the Primary Policies. There is no coverage under the policies to the extent Lockheed otherwise failed to comply with all of the provisions (including conditions) and other prerequisites to coverage thereunder;

f.   There is no coverage under the Primary Policies for costs and expenses or other obligations assumed by Lockheed without notice to and the consent of Continental;

g.   There is no coverage under the Primary Policies for losses which were known or should have been known to an insured prior to any policy period thereof;

h.   There is no coverage under the Policies for costs incurred solely to comply with statutes and regulations governing the insured's business operations;

i.   To the extent precluded by the terms of the Primary Policies and/ or public policy, there is no coverage for any punitive, exemplary or like damages that may be assessed against any insured;

j.   To the extent that coverage might otherwise exist, Continental's obligations under its policies are limited by the "other insurance" condition, any deductible, any retrospective premium, any per occurrence, per person, or aggregate limits of liability therein, and any policy provisions precluding the stacking or accumulation of the limits of liability of multiple policies.

106.   An actual and justiciable controversy exists between Continental and Lockheed as to the parties' respective rights and obligations under the Primary Policies.

107.   Continental has no adequate remedy at law.

108.   Accordingly, Continental is entitled to a declaration that it has no obligation to defend, pay any defense costs or indemnify Lockheed for any defense costs in connection with any of the Underlying Lawsuits.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment - No Duty to Indemnify)

109.    Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1-108.

110.    The Policies contain various terms, conditions, and definitions which Lockheed must satisfy or otherwise must be satisfied for amounts Lockheed has incurred and will incur in the future in connection with the Underlying Lawsuits to be covered under the Primary Policies and for Continental to have a duty to indemnify Lockheed in connection therewith. In addition, certain of the Primary Policies contain certain exclusions which preclude any duty to indemnify Lockheed against some or all of the injuries or damage in the Underlying Lawsuits.

111.    Lockheed is unable to establish coverage or is otherwise precluded from coverage for the injuries or damage arising from the claims at issue in the Underlying Lawsuits including, but not limited to, the following reasons:

    a.   To the extent that any harm alleged does not constitute "bodily injury," "personal injury" and/ or "property damage" as those terms are defined in the Primary Policies, there is no coverage thereunder;

    b.   There is no coverage  under the Primary Policies for bodily injury, personal injury and /or property damage which was not caused by an "occurrence" as that term is defined  therein and/ or "accident" within the meaning thereof;

    c.   There is no coverage under the Primary Policies for bodily injury, personal injury and/ or property damage which did not occur during the policy periods thereof as required by such policies;

    d.   There is no coverage under the Primary Policies for bodily injury, personal injury and/ or property damage which was expected or intended from the standpoint of the insured within the meaning of such policies;

e.   There is no coverage under the policies because of Lockheed's failure to comply with the Notice of Claim or Suit and Notice of Occurrence provisions as required by the Primary Policies. There is no coverage under the policies to the extent Lockheed otherwise failed to comply with all of the provisions (including conditions) and other prerequisites to coverage thereunder;

f.   There is no coverage under the Primary Policies for costs and expenses or other obligations assumed by Lockheed without notice to and the consent of Continental;

g.   There is no coverage under the Primary Policies for losses which were known or should have been known to an insured prior to any policy period thereof;

h.   There is no coverage under the Policies for costs incurred solely to comply with statutes and regulations governing the insured's business operations;

i.   To the extent precluded by the terms of the Primary Policies and/ or public policy, there is no coverage for any punitive, exemplary or like damages that may be assessed against any insured;

j.   To the extent that coverage might otherwise exist, Continental's obligations under its policies are limited by the "other insurance" condition, any deductible, any retrospective premium, any per occurrence, per person, or aggregate limits of liability therein, and any policy provisions precluding the stacking or accumulation of the limits of liability of multiple policies.

112.   An actual and justiciable controversy exists between Continental and Lockheed as to the parties' respective rights and obligations under the Primary Policies.

113.   Continental has no adequate remedy at law.

114.    Accordingly, Continental is entitled to a declaration that it has no obligation to indemnify Lockheed in connection with any claims for property damage or personal injury or bodily injury alleged in the Underlying Lawsuits.

### THIRD CAUSE OF ACTION

### (Declaratory Judgment – Allocation)

115.    Plaintiff incorporates, as if fully set forth herein, the allegations contained in paragraphs 1-114.

116.    Upon information and belief, the injuries and damage alleged in the Underlying Lawsuits, for which Lockheed seeks coverage from Continental, took place in whole or in part before the inception of the Primary Policies. In addition, on information and belief, some or all of the injuries and damages alleged in the Underlying Lawsuits, for which Lockheed seeks coverage from Continental, took place after the expiration of the Primary Policies.

117.    To the extent that it is found that Continental has any duties or obligations under the Primary Policies with respect to any of the Underlying Lawsuits, Continental seeks an order determining and declaring the respective rights and obligations of Continental, with respect to the proper allocation of any defense obligation and/or indemnity payments made or to be made, including but not limited to, the obligations of Lockheed to pay amounts attributable to periods in which there was no applicable insurance coverage, where coverage has been exhausted, where coverage was issued by now insolvent insurers or is otherwise unrecoverable.

118.    To the extent that Lockheed is entitled to coverage under the Primary Policies issued by Continental, Continental is only obligated, if at all, to participate in the defense and/or indemnity of Lockheed in the Underlying Lawsuits for its pro-rata, time-on-risk share, and

Lockheed and/or its other insurers are responsible for amounts attributable to periods other than the periods of the Primary Policies.

119.    To the extent that Continental is found to have a duty to defend and/or any obligation to pay defense costs with respect to any of the Underlying Lawsuits, which is denied, Continental is entitled to a declaration that it is only responsible for its pro-rata allocable share of the reasonable defense costs associated with the portion of any Underlying Lawsuit deemed covered, and has no obligation with respect to any uncovered portion of any lawsuit.

120.    To the extent that any amounts paid or to be paid as defense costs are not reasonable or necessary, Continental is entitled to a declaration that it is only responsible for its pro-rata allocable share of any defense costs paid or to be paid which are reasonable and necessary.

121.    An actual and justiciable controversy exists between Continental and Lockheed as to the allocation of defense and/or indemnity payments made or to be made in connection with the Underlying Lawsuits.

122.    Continental has no adequate remedy at law.

123.    Accordingly, Continental is entitled to a declaration of the parties' respective rights and obligations with respect to the allocation of defense and indemnity payments made or to be made in connection with the Underlying Lawsuits, including but not limited to the obligations of Continental and Lockheed for amounts attributable to periods in which there is no applicable insurance coverage or such coverage has been exhausted or is otherwise unrecoverable.

## **RELIEF REQUESTED**

**WHEREFORE,** the Plaintiff requests that the Court grant the following relief:

(a)    On the First Cause of Action an order declaring that Continental is not obligated to defend Lockheed in any of the Underlying Lawsuits;

(b)    On the Second Cause of Action, an order declaring that Continental is not obligated to indemnify Lockheed in any of the Underlying Lawsuits;

(c)    On the Third Cause of Action, an order declaring that Continental is not obligated to pay any portion of defense or indemnity costs that are not properly allocated to the policy periods of the Primary Policies, for any portion of any Underlying Lawsuit that is not covered, and in any event, only the reasonable and necessary amount of defense costs so allocable;

(d)    Award Plaintiff its costs, including attorneys' fees; and

(e)    Grant such further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial of all issues so triable.


Dated:    December 22, 2023                    Respectfully submitted,

New York, New York                    **MENDES & MOUNT LLP**


By:    ***S/ Eileen T. McCabe***

Eileen T. McCabe (EM 0875)
Jaimie H. Ginzberg (JG 7439)
750 Seventh Avenue
New York, New York 10019
T: (212) 261-8000
F: (212) 261-8750
eileen.mccabe@mendes.com
Jaimie.ginzberg@mendes.com

*Attorneys for Plaintiff*

# EXHIBIT A

**Exhibit A**

| Insurance Company | Layer | Policy Number |
|---|---|---|
| Continental Casualty Co. | Primary | CL2688472R |
| Continental Casualty Co. | Primary | CL2694977R |
| Continental Casualty Co. | Primary | CL2693660R |
| Continental Casualty Co. | Primary | CL2693500R |
| Continental Casualty Co. | Primary | CL4305260R |
| Continental Casualty Co. | Primary | LAA4292334R |
| Continental Casualty Co. | Primary | LAA4302892R |
| Continental Casualty Co. | Primary | LAA6250002R |
| Continental Casualty Co. | Primary | LAA6250032 |
| Continental Casualty Co. | Primary | LAA7251730 |
| Continental Casualty Co. | Primary | LAA7251733 |
| Continental Casualty Co. | Primary | LAA7251736 |
| Continental Casualty Co. | Umbrella/Excess | RDX9785329 |
| Continental Casualty Co. | Umbrella/Excess | RDX9394236 |
| Continental Casualty Co. | Umbrella/Excess | RDX9141992 |
| Continental Casualty Co. | Umbrella/Excess | RDX8894464 |
| Continental Casualty Co. | Umbrella/Excess | RDX8894465 |
| Continental Casualty Co. | Umbrella/Excess | RDX1427661 |