UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

CONTINENTAL CASUALTY COMPANY,

                              Plaintiff,

                 -v-

LOCKHEED MARTIN CORPORATION,

                              Defendant.

23 Civ. 11147 (PAE)

OPINION & ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

In this diversity action, plaintiff Continental Casualty Company ("Continental") seeks declaratory relief resolving certain rights and obligations of Continental and defendant Lockheed Martin Corporation ("Lockheed") under 12 primary liability policies. *See* Declaratory Judgment Act, 28 U.S.C. § 2201. Continental issued these policies to predecessors of Lockheed's. Lockheed seeks coverage under these policies in connection with seven lawsuits filed against it in the United States District Court for the Middle District of Florida.

Lockheed has moved to transfer the case to the District of Maryland under 28 U.S.C. § 1404(a), or, in the alternative, to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Continental has moved to enjoin a second-filed lawsuit that Lockheed initiated against it in federal court in the District of Maryland. *See Lockheed Martin Corporation v. Continental Casualty Company*, Case No. 24 Civ. 579. For the reasons that follow, the Court (1) grants Lockheed's motion to transfer, (2) denies as moot Lockheed's motion to dismiss for improper venue, and (3) denies Continental's motion to enjoin the second-filed lawsuit in the District of Maryland.

I.     **Factual Background**[1]

     A.     **The Parties**

Continental is an Illinois corporation, headquartered in Chicago, Illinois. Dkt. 20 ("AC") ¶ 13. Lockheed is a Maryland corporation, with its current headquarters and principal place of business in Bethesda, Maryland. *Id.* ¶ 14.

     B.     **Continental Issued Primary Liability Policies to Lockheed's Predecessors**

Continental issued 12 primary liability policies (the "Primary Policies") to predecessor companies of Lockheed's—the Glenn L. Martin Company and Martin Marietta Corporation—covering successive periods spanning January 1, 1956, and July 1, 1977. *Id.* ¶ 2. The first seven policies, covering periods between January 1, 1956, and January 1, 1963, were entered into between Continental, based in Chicago, and the Glenn L. Martin Company, based in Baltimore, Maryland. These were:

- Policy No. CL 2688472R (effective January 1, 1956 – April 1, 1957);
- Policy No. CL 2694977R (effective April 1, 1957 – April 1, 1958);
- Policy No. CL 2693660R (effective April 1, 1958 – April 1, 1959);
- Policy No. CL 2693500R (effective April 1, 1959 – April 1, 1960);
- Policy No. CL 4305260R (effective April 1, 1960 – April 1, 1961);

---

[1] The facts on which this decision is based are drawn from the parties' pleadings and submissions in support of and in opposition to the instant motions—specifically, Continental's Amended Complaint, Dkt. 20 ("AC"), the declaration of Susan M. Benjamin and attached exhibits filed in support of Lockheed's motion to transfer or dismiss, Dkt. 25 ("Benjamin Decl."), the declaration of Eileen T. McCabe and attached exhibits filed in support of Continental's motion to enjoin the second-filed action, Dkt 29 ("McCabe Decl."), and a reply declaration of Susan M. Benjamin, Dkt. 33 ("Reply Benjamin Decl."). Such extrinsic materials are properly considered on motions to transfer venue. *See Rankel v. Kabateck*, No. 12 Civ. 216 (VB), 2013 WL 7161687, at *1 (S.D.N.Y. Dec. 9, 2013) (considering evidence outside of complaint on motion to transfer under 28 U.S.C. § 1404(a) or § 1406(a)).


- Policy No. LAA 4292334R (effective April 1, 1961 – January 1, 1962);
- Policy No. LAA 4302892R (effective January 1, 1962 – January 1, 1963).

Benjamin Decl., Exs. 1–7. The next five policies, covering periods between January 1, 1963 and July 1, 1977, were entered into between Continental and Martin Marietta Corporation, based in New York City. These were:

- Policy No. LAA 6250002R (effective January 1, 1963 – June 30, 1965);
- Policy No. LAA 6250032 (effective July 1, 1965 – July 1, 1968);
- Policy No. LAA 7251730 (effective July 1, 1968 – July 1, 1971);
- Policy No. LAA 7251733 (effective July 1, 1971 – July 1, 1974);
- Policy No. LAA 7251736 (effective July 1, 1974 – July 1, 1977).

*Id.*, Exs. 8–13.

Under the Primary Policies, Continental was generally required to cover defense costs and damages in lawsuits against Lockheed and its predecessors relating to bodily injury, personal injury, or property damage.[2] AC ¶¶ 24–30. The Primary Policies, however, based coverage on certain conditions being met, including timely notice of the lawsuits.[3] *Id.* ¶ 23. Generally, these conditions were formulated as follows:

> NOTICE OF CLAIM OR SUIT
>
> If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or representatives.
>
> NOTICE OF OCCURRENCE

---

[2] The terms of the individual policies varied. Because the present motion deals primarily with proper venue, the Court does not have occasion to detail the specific terms of each policy.

[3] The AC does not allege whether these same pre-conditions were contained in the policies in effect between January 1, 1956, and April 1, 1958. *Id.* ¶ 23.

> Written notice of any occurrence shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses.

*Id.* ¶ 23. If these and other pre-conditions were met, Lockheed and its predecessors would then be entitled to reimbursement of defense costs and indemnification for the covered lawsuits.

    **C.**    **Underlying Lawsuits**

In 1957, Lockheed's predecessors began business operations at a weapons manufacturing facility at 5600 Sand Lake Road, Orlando, Florida (the "Facility"). *Id.* ¶ 4. The Facility was originally owned by the Glenn L. Martin Company, which, in 1961, became the Martin Marietta Corporation, and, in 1995, became Lockheed in a merger between the Martin Marietta Corporation and Lockheed. *Id.* ¶ 4.

At the Facility, Lockheed and its predecessors allegedly generated toxic contaminants and manufacturing byproducts including perfluoroalkyls, trichloroethylene, tetrachloroethylene, benzene, chloroform, xylene, lead, and arsenic. *Id.* ¶ 5. Lockheed's attempt to store and dispose of these toxic byproducts allegedly contaminated the air, soil, and groundwater of nearby areas. *Id.* This contamination allegedly injured Facility employees and persons working and living nearby, causing them to suffer bodily injury, personal injury, and property damage. These allegations are the bases of seven lawsuits filed against Lockheed and pending in the United States District Court for the Middle District of Florida. These are:

- *Grayson v. Lockheed Martin Corp.*, 20 Civ. 1770 (RBD) (DCI) (Complaint filed September 28, 2020; Fourth Amended Complaint filed on March 2, 2022)

- *Vandestreek et al. v. Lockheed Martin Corp.*, 21 Civ. 1570 (RBD) (DCI) (Complaint filed on September 23, 2021; Amended Complaint filed on October 22, 2021)

- *Henderson et al. v. Lockheed Martin Corp.*, 21 Civ. 01363 (RBD) (DCI) (Complaint filed on August 19, 2021; Amended Complaint filed on March 2, 2022)

- *Davis v. Lockheed Martin Corp.*, 22 Civ. 81 (RBD) (DCI) (Complaint filed on January 13, 2022; Amended Complaint filed on January 11, 2023)

- *Perrotti v. Lockheed Martin Corp.*, 22 Civ. 1338 (RBD) (DCI) (Complaint filed on July 28, 2022)

- *Millea et al. v. Lockheed Martin Corp.*, 23 Civ. 677 (RBD) (DCI) (Complaint filed on April 14, 2023)

- *Oliver v. Lockheed Martin Corp.*, 23 Civ. 2291 (RBD) (DCI) (Complaint filed on November 29, 2023).

*Id.* ¶ 3. Lockheed delegated to Marsh McLennan ("Marsh"), an insurance brokerage company headquartered in New York, the responsibility to provide notice of Lockheed's claims to Continental. *Id.* ¶ 104. On August 18, 2022, Marsh's senior vice president, Brian Tauscher, located in Boston, Massachusetts, sent a notice letter to Continental advising that Lockheed was seeking defense and indemnity with respect to the *Vandestreek*, *Davis*, *Henderson*, *Perrotti*, and *Grayson* lawsuits. Benjamin Decl., Ex. 20; *see also id.* ¶¶ 33, 47, 58, 75, 86. On December 12, 2022, Continental's claims administrator, Resolute Management, Inc. ("Resolute"), responded by letter stating that Continental "will defend Lockheed in the Pending Suits under the Primary Policies . . . , subject to a reservation of rights." Benjamin Decl., Ex. 22 at 3 (letter sent by Resolute employee Daniela Stojkova, located in Chicago). Continental reserved its rights to deny coverage if the allegations in the lawsuits did not constitute an "occurrence" as defined in the underlying insurance policies, and to withdraw from participating in the defense of these suits if it determined that a defense obligation had not been triggered. *Id.* at 5–6; AC ¶¶ 42, 53, 62, 81, 90.

On May 31, 2023, Tauscher sent an additional notice letter advising that Lockheed was seeking defense and indemnity under the Primary Policies for the *Millea* lawsuit. Benjamin Decl., Ex. 21; *see* AC ¶ 67. By letter dated June 7, 2023, Continental agreed to provide a

defense to Lockheed for *Millea* under the Primary Policies, pursuant to the same reservation of rights it had asserted in the December 12, 2022 letter. *Id.* ¶ 71; Benjamin Decl., Ex. 23.

After receiving the May 2023 notice, Continental several times requested information about the rates Lockheed had negotiated with Greenberg Traurig, the law firm Lockheed had retained to defend it in the underlying lawsuits. *See id.* ¶¶ 102–04. Lockheed was generally unresponsive to these requests. On July 11, August 29, and October 18, 2023, Continental sought to review Greenberg Traurig's invoices for its legal fees. *Id.* ¶¶ 103–04. On October 23 and October 30, 2023, Continental was sent Greenberg Traurig's invoices. *Id.* ¶ 106. Around this time, Continental also learned that Chubb Insurance had paid all defense costs for the *Perrotti* and *Davis* lawsuits. *Id.* ¶ 107.

On December 1, 2023, Tauscher sent a third notice letter notifying Continental that Lockheed was seeking defense and indemnity under the Primary Policies for the *Oliver* lawsuit, filed on November 29, 2023. *Id.* ¶ 95. By letter dated December 22, 2023, Continental reserved its rights and disclaimed coverage for the *Oliver* lawsuit and the previously notified lawsuits—*Vandestreek*, *Henderson*, *Davis*, *Perrotti*, *Grayson*, and *Millea*. *Id.* ¶ 96. Continental gave several reasons for disclaiming coverage. These included that: (1) Lockheed had provided late notice of the lawsuits; (2) several injuries alleged in the lawsuit occurred outside the policy period; (3) allegations of medical monitoring costs did not qualify as bodily or personal injury under the Primary Policies; (4) allegations with respect to property value diminution did not qualify as property damage under the Primary Policies; and (5) certain claims based on soil, water, and air contamination were not covered as they fell within the Primary Policies' pollution exclusion. Benjamin Decl., Ex. 24. Finally, although Continental claimed in the letter that it

6

owed no defense costs for the *Henderson* or *Grayson* suits, it nevertheless agreed to pay its pro rata share of the reasonable and necessary defense costs. *Id.* at 14.

## II. Procedural History

On December 22, 2023, Continental filed the Complaint, seeking declaratory relief as to its and Lockheed's respective rights and obligations. Dkt. 1. On February 28, 2024, Lockheed moved to dismiss or transfer the case to the District of Maryland. Dkt. 11. On March 1, 2024, the Court issued an amend or oppose order. Dkt. 14. On March 20, 2024, Continental filed an Amended Complaint. Dkt. 20. On April 10, 2024, Lockheed moved to dismiss the Amended Complaint or, in the alternative, to transfer the case, and filed a supporting memorandum of law, Dkt. 26. ("Def. Mem.") and declaration, Dkt. 25 ("Benjamin Decl."). On April 24, 2024, Continental filed a memorandum of law in opposition to the motion to dismiss. Dkt. 29 ("Pl. Opp."). On May 1, 2024, Lockheed filed a reply in support of its motion to dismiss, Dkt. 32 ("Def. Reply"), and a supporting declaration, Dkt. 33 ("Reply Benjamin Decl.").

Also on April 24, 2024, Continental moved for a preliminary injunction to enjoin the second-filed lawsuit, Dkt. 28, and filed a supporting memorandum of law, Dkt. 29 ("Pl. Mem.").[4] On April 25, 2024, the Court ordered Continental to serve the preliminary injunction motion and supporting papers forthwith. Dkt. 30. On April 30, 2024, Continental filed proof of service. Dkt. 31. On May 7, 2024, Lockheed filed an opposition to the motion for preliminary injunction, Dkt. 36 ("Def. Opp."), and a declaration in support, Dkt. 35 ("Gallagher-Whitman Decl.").

---

[4] Continental's memorandum of law, Dkt. 29, simultaneously served as both its memorandum of law in support of the motion for preliminary injunction and its memorandum of law in opposition to the motion to dismiss or transfer the case.

### III. Applicable Legal Standards

#### A. Motion to Transfer Under 28 U.S.C. § 1404(a)

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Section 1404(a)'s goals are "to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). Section 1404 "gives district courts wide latitude to decide whether to transfer venue." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013) (citation omitted).

A two-step inquiry guides whether transfer under § 1404(a) is appropriate. The Court first determines "whether the action could have been brought in the transferee district." *Id.* at 743 (internal quotation marks omitted). If so, the Court next determines "whether transfer would be an appropriate exercise of the Court's discretion." *Id.* (internal quotation marks omitted). As to the latter, the Court must balance various factors: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017) (citation and internal quotation marks omitted). "There is no rigid formula for balancing these factors and no single one of them is determinative" in what is "essentially an equitable task left to the Court's discretion."

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citation and internal quotation marks omitted). "The moving party has the burden of establishing that transfer is appropriate." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001).

B.     **First-Filed Rule**

"Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first-filed' rule, whereby the court which first has possession of the action decides it." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). But this rule applies only where "in fact the suits are duplicative." *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006). The first-filed rule gives rise to a presumption, but it need not be applied where there is a "showing of balance of convenience or special circumstances giving priority to the second [case]." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (quoting *First City Nat'l Bank & Trust v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989)). "The factors to be weighed in balancing the competing interests for the purposes of assessing the applicability of the first-filed rule and deciding a motion to transfer venue are essentially the same, and so a single analysis [can] resolve both issues." *Am. Steamship Owners*, 474 F. Supp. 2d at 481 (*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 514 (S.D.N.Y. 2004)).

IV.    **Competing Motions to Transfer to the District of Maryland or to Enjoin the Second-Filed Lawsuit in the District of Maryland**

The pending motions by Lockheed and Continental are mirror images of each other. Lockheed moves to transfer the case, brought December 22, 2023, to the District of Maryland pursuant to 28 U.S.C. § 1404(a). It does so based on a substantively identical lawsuit it filed

9

against Continental in the District of Maryland on February 26, 2024. Continental opposes the transfer motion and moves, under the first-filed rule, to enjoin the Maryland lawsuit. Because the analysis to resolve these motions is the same, the Court will address the motions together.

### A.      First-Filed Rule

The first-filed rule presumptively applies here and favors litigation continuing in this District because the actions involve the same parties and issues, and this suit was filed first. *Reliance Ins.*, 155 F. Supp. 2d at 54. But Lockheed argues that it has rebutted the presumption "by proof of the desirability of proceeding in the forum of the second-filed action," *id.*, by showing that the balance of convenience factors, which are the same as those governing motions to transfer venue under Section 1404(a), favors the second-filed action, *Emps. Ins. of Wausau v. Fox Ent. Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). The Court accordingly considers these factors.[5]

### B.      Balance of Convenience Factors

The nine convenience factors favor transferring the case to the District of Maryland.

#### 1.      Convenience of Witnesses

"Courts typically regard the convenience of witnesses as the most important factor in considering a § 1404(a) motion to transfer." *Capitol Recs., LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 366 (S.D.N.Y. 2009). Generally, "the convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (citation and internal quotation marks omitted) (cleaned up).

---

[5] The parties do not dispute that the first step in the transfer inquiry is satisfied: the "action could have been brought in the transferee district"—the District of Maryland. *Everlast World's Boxing*, 928 F. Supp. 2d at 743. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Because Lockheed resides in Maryland, venue would have been proper had Continental sued it in the District of Maryland.

The present insurance coverage dispute is unlikely to turn on witness testimony to the same extent as other types of lawsuits; for example, suits claiming workplace discrimination or personal injury. Documentary evidence, including as to the application of insurance policies to claims brought in the underlying litigations, is more likely to prove decisive. Nevertheless, based on the pleadings and counsels' submissions, there are areas in dispute as to which percipient witnesses are apt to be called. There may be, for example, a need for testimony regarding claim notification and regarding authentication of dated insurance records. Lockheed has identified as potential witnesses recordkeepers who maintain copies of historical insurance documents and information about its (and its predecessors') insurance practices, executives that have communicated with Continental in connection with this dispute, and personnel familiar with the underlying lawsuits in the Middle District of Florida. For these potential witnesses, Maryland is a more convenient venue than New York.

On the record presented, from the perspective of convenience, Continental's witnesses are presumably agnostic as between Maryland and New York. Continental is headquartered in Illinois. Its employee witnesses would presumably have to travel from there to either Maryland or New York. Continental has not shown, let alone with supporting detail, why either venue is more inconvenient for its witnesses. Lockheed, in contrast, is headquartered in Maryland. For personnel based at its headquarters, that district is far more convenient than New York, because in-person trial testimony would necessitate several hours of travel and, likely, overnight hotel stays. *See* Reply Benjamin Decl. ¶ 2 (listing Michael Harrington and Susan Benjamin, both Continental employees based in Maryland, as possible witnesses).

In contrast, no trial witnesses appear to be located in this District. Continental notes that Lockheed's insurance broker, Marsh, is headquartered in New York, and was responsible for

11

providing notice of the underlying lawsuits to Continental. AC ¶¶ 33, 47, 58, 67, 75, 86, 95, 97, 104. But on the record before the Court, the only Marsh employee who communicated with Continental was Marsh's senior vice president, Brian M. Tauscher. He is located in Boston, Massachusetts. *See* Benjamin Decl., Exs. 20–24 (correspondence between Tauscher and Continental listing Tauscher's office in Boston, Massachusetts). That does not assist Continental on this motion. Because no relevant witnesses are located in New York and some are located in Maryland, this factor strongly favors transfer. *See, e.g.*, *France Telecom S.A. v. Marvell Semiconductor, Inc.*, No. 12 Civ. 4986 (JSR), 2012 WL 6808527, at *2 (S.D.N.Y. Dec. 28, 2012) (that plaintiff "identified no relevant witnesses . . . located in New York" favored transfer); *Sentegra, LLC v. ASUS Comp. Int'l*, No. 15 Civ. 3768 (GHW), 2016 WL 3093988, at *1 (S.D.N.Y. June 1, 2016) (transfer favored where "no witnesses reside in New York").

### 2. Convenience of Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." *Everlast World's Boxing*, 928 F. Supp. 2d at 744. A motion to transfer "should not be granted if all transfer would accomplish is to shift the inconvenience from one party to the other." *Id.* (citation and internal quotation marks omitted).

Lockheed has shown that litigating this action in Maryland is more convenient for it than doing so in New York given its Maryland headquarters. A Maryland trial venue, for example, would more readily enable headquarters-based company officials to attend trial or meet with trial counsel. Continental, in contrast, has not shown a difference in convenience for it as between New York and Maryland. As such, transfer would benefit Lockheed and not harm Continental. Although this factor does not weigh heavily, it favors transfer. *See, e.g.*, *In re Connetics*, No. 06 Civ. 11496 (SWK), 2007 WL 1522614, at *3–4 (S.D.N.Y. May 23, 2007) (transferring lawsuit to

a more convenient venue for defendants where plaintiff would not be greatly inconvenienced); *Ravenwoods Inv. Co. v. Bishop Cap. Corp.*, No. 04 Civ. 9266 (KMK), 2005 WL 236440, at *5 (S.D.N.Y. Feb. 1, 2005) (convenience of parties "weigh[ed] heavily in favor of transfer" where plaintiff's inconvenience would be "minor" in comparison to inconvenience defendants would experience absent a transfer).

### 3. Location of Relevant Documents and Ease of Access to Sources of Proof

The location of relevant documents and the relative ease of access to sources of proof is neutral. Electronic discovery has reduced the burdens presented by distant documents, and neither party has concretely shown that burdens of this type would uniquely arise from one of the competing venues. This factor does not favor either venue. *See Am. Steamship Owners*, 474 F. Supp. 2d at 484 ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *Everlast World's Boxing*, 928 F. Supp. 2d at 747 (same).

### 4. Locus of Operative Facts

"The location of the operative events is a 'primary factor' in determining a § 1404(a) motion to transfer." *Smart v. Goord*, 21 F. Supp. 2d 309, 316 (S.D.N.Y. 1998) (citation omitted). In prior cases, it has been held to substantially favor transfer from this District where operative facts arose in the proposed transferee district and the party opposing transfer "ha[d] not shown that any of the operative facts arose in the Southern District of New York." *Everlast World's Boxing*, 928 F. Supp. 2d at 745 (citation and internal quotation marks omitted).

"To determine the locus of operative facts, a court must look to the site of the events from which the claim arises." *Id.* The claims in this declaratory judgment action sound in breach of contract. The parties dispute whether Lockheed is entitled to coverage under the terms of the

Primary Policies issued by Continental. That dispute turns on the construction and application of the policy terms of the 12 insurance contracts. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) ("essence" of "Gulf's suit seek[ing] a declaration that it is not liable for the personal injury judgment . . . , principally because Gulf was not timely notified of the" plaintiff's claims sounds in contract, to wit, "whether the defendants . . . were in breach of or complied with that insurance contract"). Accordingly, in a contract case, the locus of operative facts is determined by the location "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 Civ. 8106 (PGG), 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009) (citation omitted). In the context of § 1404(a) venue analysis, a court "may determine that there are several loci of operative facts." *Everlast World's Boxing*, 928 F. Supp. 2d at 745.

Here, relevant events related to the relevant insurance contracts' negotiation, formation, and execution took place in both New York and Maryland. The relevant contracts are the 12 primary policies Continental issued to Lockheed's predecessors—the Glenn L. Martin Company and Martin Marietta Corporation—between January 1, 1956 and July 1, 1977. The first seven policies, covering January 1, 1956 and January 1, 1963, were entered into between Continental, based in Chicago, and the Glenn L. Martin Company, based in Baltimore. The next five policies, covering January 1, 1963 and July 1, 1977, were entered into between Continental, based in Chicago, and Martin Marietta Corporation, based in New York City. Because New York and Maryland were home bases for two of the three contracting parties, both potential venues were important locations for contract formation and performance.

There is, however, a basis for distinction. New York's connection to the operative facts is based on events particularly long ago. The Martin Marietta Corporation, which was located in

New York, no longer exists. Its Maryland-based successor, Lockheed, is the entity claiming coverage under the Primary Policies. To the extent modern communications prove germane at trial, those between Lockheed and Continental do not implicate New York. And on the present record, the events that did occur in New York—the contract's formation and negotiation—do not appear meaningfully at issue. The dispute instead concerns whether the misconduct alleged in the underlying lawsuits, which occurred in Orlando, Florida, is covered under the policy terms, and whether Lockheed properly and timely notified Continental about the underlying lawsuits. These events did not concern New York. In contrast, some of Lockheed and Continental's relevant communications occurred in Maryland, where Lockheed is headquartered. This factor favors transfer.

### 5.     Availability of Process to Compel Attendance of Unwilling Witnesses

The next factor examines the Court's ability to compel the attendance of unwilling witnesses. A district court can subpoena non-party witnesses only within its district or within 100 miles of the district. *See* Fed. R. Civ. P. 45(c)(1)(A). "This factor is generally relevant only with respect to third-party witnesses, because employee witness[es] are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 442 (E.D.N.Y. 2012) (citation omitted).

Here, regardless of where this case is tried, most third-party witnesses will fall outside of the respective Court's subpoena power. Lockheed's insurance broker, Tauscher, is located in Boston. And Continental's claims adjuster, Resolute, has employees in both Chicago and Philadelphia. Courts in both Maryland and New York would face the same challenges securing the testimony of third-party witnesses. This factor is thus neutral.

### 6. Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 31 (S.D.N.Y. 2016). Such a disparity does not exist here. Both Lockheed and Continental are large businesses that can afford to litigate nationwide. This factor is neutral.

### 7. Forum's Familiarity with Governing Law

The parties devote scant space to this factor. Continental broadly claims that New York contract law will apply here because "the Primary Policies at issue in both actions were issued to Lockheed in New York and delivered to Lockheed in New York during the majority of the years at issue, and the place of contract was New York for a majority of the years." Pl. Opp. at 17–18. That is an overstatement. Seven of the 12 insurance policies are unconnected to New York in that the contracting parties, Continental and the Glenn L. Martin Company, were headquartered, respectively, in Illinois and Maryland. As for the remaining five policies, Continental claims that "the place of contract was New York," but that is not clearly so. On these, Martin Marietta Corporation listed New York as its business address, whereas Continental listed Illinois as its business address. Neither side has pointed to any provision in the governing contracts requiring application of a particular state's law. Lockheed, for its part, does not argue that Maryland law applies.

Although this factor had the potential slightly to favor New York over Maryland, the Court cannot so find on the present record. Even accepting Continental's premise that New York law would apply, it has not identified any legal issue as to which differences in state law—or the greater presumed expertise with New York law of courts in this forum—could matter in this case. Given the limited and inconclusive briefing, the Court finds this factor neutral.

### 8. Plaintiff's Choice of Forum

"A plaintiff's choice of forum is entitled to considerable weight and is generally not disturbed unless the balance of the factors strongly favors transfer." *Dickerson*, 315 F.R.D. at 32. Where "the forum selected is not plaintiff's home forum or the place where the operative facts of the action occurred," however, "this diminishes the weight assigned to this factor." *Id.* Such is the case here. This District is not Continental's home, and the controversy, as reviewed above, has a lesser connection to New York than to Maryland. This factor, although favoring Continental's choice of New York, weighs less heavily than in cases where the plaintiff had meaningful ties to the chosen forum.

### 9. Trial Efficiency and the Interest of Justice

Finally, the Court's "consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). In support of transfer, Lockheed argues that this District has a busier docket. *See Wave Studio, LLC v. Gen. Hotel Mgmt. Ltd.*, No. 13 Civ. 9239 (CS), 2017 WL 972117, at *8 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 712 F. App'x 88 (2d Cir. 2018) (noting that Southern District of New York is "one of the busiest in the country, making it a paradigmatic congested center of litigation."). Continental counters that it would be more efficient to maintain the case in this District because it was filed here first. The Court does not find either argument weighty. This District (and this Court) have the bandwidth to efficiently supervise this litigation, and the Court has already considered Continental's choice of forum in connection with the factor above.

There is, however, a separate consideration germane to this factor: Lockheed has made a substantial argument that venue in this District is lacking under 28 U.S.C. § 1391(b)(2).

17

Continental asserts that venue lies under § 1391(b)(2), under which venue is proper in the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." But Lockheed disputes that that is so, given that neither party resides in New York; the underlying lawsuits for which Lockheed seeks coverage arose from its operation of a facility in Florida; and most of the insurance policies at issue (seven of 12) have no nexus to New York. Continental's assertion of New York venue is based on the fact that the remaining five policies were entered into decades ago by Lockheed's predecessor, Martin Marietta Corporation, then located in New York. The Court regards Lockheed's challenge to statutory venue as substantial. Continental, in contrast, does not contest the propriety of venue in the District of Maryland, nor could it.

The potential infirmity of venue in this District favors, in the interests of justice, transfer to a district where venue is undeniably proper. "[T]he purpose of statutorily defined venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Micromen Techs., Inc. v. Dreifus Assocs. Ltd.*, No 14 Civ. 9145 (LAK), 2015 WL 8375190, at *4 (S.D.N.Y. Dec. 8, 2015). And it would invite legal risk to proceed in this District. Were a dispositive ruling or trial overturned for want of venue, such would needlessly add to the cost and time of this litigation. No such cloud would exist, however, were the case litigated in Maryland.

. . .

Considered together, the factors above favor transfer to the District of Maryland, and overcome the presumption set by the first-filed rule. Five factors are neutral. Four—including the important factor of convenience of witnesses—clearly support transfer. None support continued litigation in this District.

The Court accordingly grants the motion to transfer venue. In light of this ruling, the Court will deny as moot Lockheed's alternative motion to dismiss for improper venue.

## CONCLUSION

The Court grants Lockheed's motion to transfer the case to the District of Maryland pursuant to 28 U.S.C. § 1404(a), denies as moot its motion to dismiss the case for improper venue, and denies Continental's motion to enjoin the second-filed suit. The Clerk of Court is respectfully directed to terminate all pending motions and to transfer this case to the District of Maryland.

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: August 19, 2024
  New York, New York